**Opinion filed October 22, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00042-CV

_____

## IN THE MATTER OF THE GUARDIANSHIP OF E.M.D.

## --and--

_____

## No. 11-20-00043-CV

_____

## IN THE MATTER OF THE GUARDIANSHIP OF C.D.D.

**On Appeal from the County Court at Law No. 2**
**Ector County, Texas**
**Trial Court Cause Nos. G1297-CC & G1298-CCL2**

### M E M O R A N D U M   O P I N I O N

After E.M.D. and C.D.D.'s parents, Natalee and Jacob Dean, were killed in a tragic accident, numerous family members sought to be appointed as the children's permanent guardian. The trial court appointed Jennifer Payne, the children's maternal aunt, as guardian.[1]

_____

[1]Because individuals involved in this litigation have the same surname, we will refer to individuals by first name where necessary for purposes of clarity.

In five issues, Billie Dean, the children's paternal grandmother, complains that the trial court abused its discretion when it (1) denied Billie's application to be appointed the children's guardian, (2) applied an extratextual test to determine guardianship of the children, (3) appointed Jennifer as the guardian, (4) relied on the recommendation of an attorney ad litem who had not met with the children, and (5) failed to file additional findings of fact and conclusions of law. We affirm the trial court's orders in which it appointed Jennifer as the permanent guardian of E.M.D. and C.D.D.

*Background*

Jack Dean, the children's paternal grandfather and Billie's husband, worked for Aghorn Operating, Inc. Jacob, who was Billie and Jack's son, was the "relief pump" for Jack. On October 26, 2019, Billie and Jack were in Ruidoso, and Jacob went to Aghorn's pumphouse.

When Jacob failed to return home, Natalee went to the pumphouse. Natalee was talking on the phone to either Billie or Jack when she went into the pumphouse. Both Natalee and Jacob died from exposure to hydrogen sulfide gas in the pumphouse. Natalee's parents, Marilyn and Robert Payne, initially took custody of the children.

"[P]retty quick after the death[s]" and before the funeral, both families met with an attorney, and a wrongful death lawsuit was filed in Harris County. The plaintiffs in the Harris County lawsuit were Billie and Jack; Marilyn and Robert; Jennifer, as the administrator of Natalee's estate; Jacob's brother, John Dean, and John's wife, Genevieve, as next friend for E.M.D. and C.D.D.; and Jordan Dean, Jacob's 19-year-old daughter.[2]

---

[2]Jordan testified that she signed the contract with the attorneys under duress from Jack, Billie, and Jack's brother. Jordan repudiated the contract the day after she signed it and hired separate counsel. Jennifer denied that she signed a contract with the law firm to represent her as the representative of Natalee's estate.

Billie, Jennifer, Jordan, and John all filed applications to be appointed the children's permanent guardian. The trial court held a combined hearing on all of the applications. The evidence at the hearing established that, after Natalee's and Jacob's deaths, there had been extensive conflict between Billie and Jack, on the one hand, and the Paynes and Jordan, on the other hand.

Billie testified as to her qualifications to be the children's guardian. Jordan and Jennifer, however, testified that, in their opinion, Billie had a conflict that prevented her from being appointed the guardian of the children. According to Jordan, there was a possibility that Billie or Jack would be named as a responsible third party or a defendant in the wrongful death litigation. Specifically, Jordan testified that she learned from Billie that Billie told Natalee to go inside the pumphouse and that there could be a potential claim against Jack because the accident occurred on his lease. According to Jennifer, at the time of the accident, Billie and Jack were talking to Natalee and knew the situation that Natalee "could have possibly been walking into." However, rather than telling Natalee to stop and to call the authorities or someone at the "company," Jack told her to go into the building and look for Jacob. Natalee died when she entered the building. Jennifer believed that either Billie or Jack contributed to Natalee's death, and if she was named guardian, Jennifer intended to sue Billie, Jack, or both. The trial court acknowledged during the hearing that it had been established, and that the court was "well aware," that Billie and Jack had a potential liability to the children.

The attorney ad litem appointed to represent the children recommended that Jennifer be appointed guardian. After the trial court conducted an analysis of the best interest of the children, it orally ruled that Jennifer would be the guardian. Billie asked whether the trial court had ruled on Billie's suitability to be the guardian. The trial court responded, "As it stands right now, all four, in what I saw, were suitable. The most suitable was Jennifer."

3

On January 16, 2020, the trial court signed a written order in each case in which it appointed Jennifer as the guardian of E.M.D. and C.D.D. and granted Jennifer "all rights and duties of Guardians under the Texas Estates Code" (the guardianship orders). In its orders, the trial court found by a preponderance of the evidence that Jennifer was eligible and qualified to serve as guardian. *See* TEX. EST. CODE ANN. § 1101.101(a)(2)(B) (West 2020).[3]

At Billie's request, the trial court made findings of fact and conclusions of law. As relevant here, the trial court found that Jordan, Billie, Jennifer, and John were "eligible, qualified and not disqualified to be appointed as guardian based on the testimony, evidence presented and pleadings on file." Billie appealed the guardianship orders.

## *Jurisdiction*

Jennifer requests that we dismiss these appeals because Billie does not have standing to contest the appointment of Jennifer as guardian. If Billie lacks standing, we do not have jurisdiction over her claims and must dismiss this appeal. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008); *see also In re Guardianship of Bernsen*, No. 13-17-00076-CV, 2018 WL 2355198, at *1 (Tex. App.—Corpus Christi–Edinburgh May 10, 2018, no pet.) (mem. op.) (holding that,

---

[3]Before appointing a guardian for a proposed ward, a trial court is required to find by clear and convincing evidence that the proposed ward is an incapacitated person, that it is in the proposed ward's best interest to have the court appoint a person as the proposed ward's guardian, and that the proposed ward's rights or property will be protected by the appointment of a guardian. EST. § 1101.101(a)(1). The trial court is also required to find by a preponderance of the evidence that it has venue of the case; that the person to be appointed guardian is eligible to act as guardian and is entitled to appointment or, if no eligible person entitled to appointment applies, that the person appointed is a proper person to act as guardian; that if a guardian is appointed for a minor, the guardianship is not created for the primary purpose of enabling the minor to establish residency for enrollment in a school or school district for which the minor is not otherwise eligible for enrollment; and that the proposed ward is totally without capacity to care for himself or herself and to manage his or her property or that the proposed ward lacks the capacity to do some, but not all, of the tasks necessary to care for himself or herself or to manage his or her property. *Id.* § 1101.101(a)(2).

The trial court "may not grant an application to create a guardianship unless the applicant proves each element required by" the Estates Code. *Id.* § 1101.101(b). In these cases, the trial court made all the required findings in its orders in which it appointed Jennifer as guardian.

if the appellee lacked standing to file an application for guardianship, "any order entered by the trial court in favor of appellee is void").

Any person has a right to commence a guardianship proceeding or appear and contest a guardianship proceeding unless that person has "an interest that is adverse to a proposed ward." EST. § 1055.001. A person who has an interest that is adverse to a proposed ward may not file an application to create a guardianship for the proposed ward, contest the creation of a guardianship for the proposed ward, or contest the appointment of a person as guardian of the proposed ward. *Id.* § 1055.001(b)(1)–(3). The trial court "shall determine by motion in limine the standing of a person who has an interest that is adverse to a proposed ward." *Id.* § 1055.001(c).

Billie argues that Jennifer failed to file a pretrial motion in limine to contest Billie's qualifications and, therefore, has waived the right to challenge Billie's qualifications on appeal. *See In re Guardianship of Soberanes*, 100 S.W.3d 405, 406-07 (Tex. App.—San Antonio 2002, no pet.) (holding that a party who fails to obtain a ruling from the trial court on a motion in limine forfeits the right to complain on appeal that the temporary guardian was unsuitable and lacked standing). We note that a true standing issue impacts the trial court's subject-matter jurisdiction and cannot be waived. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993). However, we need not address whether a party can waive a challenge to an applicant's standing to participate in a guardianship proceeding because the record demonstrates that Billie had standing.

"[W]hether a party has standing to participate in a guardianship proceeding is a question of law." *In re Guardianship of Miller*, 299 S.W.3d 179, 188 (Tex. App.—Dallas 2009, no pet.). "When standing has been conferred by statute, the statute itself should serve as the proper framework for a standing analysis." *In re*

*Guardianship of Bernsen*, No. 13-17-00591-CV, 2019 WL 3721339, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 8, 2019, pet. denied) (mem. op.) (quoting *In re K.O.H.*, 426 S.W.3d 879, 883 (Tex. App.—Houston [14th District] 2014, no pet.)).

The standard for determining a person's standing to file a guardianship application under Section 1055.001 of the Estates Code is distinct from the standard for determining whether a person is disqualified from being appointed as guardian. *In re Guardianship of Gilmer*, No. 04-14-00362-CV, 2015 WL 3616071, at *7 (Tex. App.—San Antonio June 10, 2015, no pet.) (mem. op.). The standards differ because "standing under section 1055.001(b)(1) is a threshold requirement that must be met to simply proceed with an application which is unlike the merits[-]based determination of which person should be appointed as guardian." *Id.*; *see also In re Estate of Chapman*, 315 S.W.3d 162, 164 (Tex. App.—Beaumont 2010, no pet.) (A proceeding "in limine" to challenge standing is a "threshold or preliminary proceeding before the trial.").

Section 1055.001 was designed to "protect the well-being of the individual." *In re Guardianship of Bernsen*, 2019 WL 3721339, at *9 (quoting *Allison v. Walvoord*, 819 S.W.2d 624, 627 (Tex. App.—El Paso 1991, orig. proceeding [leave denied]); *see also* Est. §§ 1001.001(a) (a court may appoint a guardian over an incapacitated person "only as necessary to promote and protect the well-being of the incapacitated person"), 1002.017(1) (an "incapacitated person" under the Estates Code includes a minor). When, as in these cases, there is no evidence of how the proposed wards would define their interests, "adversity exists when the applicant's interests would not promote and protect the proposed ward's well-being." *In re Thetford*, 574 S.W.3d 362, 379 (Tex. 2019) (orig. proceeding); *see also In re Guardianship of Bernsen*, 2019 WL 3721339, at *6 (noting that the ordinary meaning of the term "adverse interest" is "an interest that is opposed or contrary to

6

that of someone else" (quoting *Adverse interest*, BLACK'S LAW DICTIONARY (11th ed. 2019))).

Evidence sufficient to support a finding that a person has a conflict of interest with the proposed ward may not be sufficient to establish an adverse interest. *In re Guardianship of Gilmer*, 2015 WL 3616071, at *8–9; *In re Guardianship of Miller*, 299 S.W.3d at 189 (while evidence that applicant is indebted to the ward might disqualify the applicant from serving as guardian, it does not automatically rise to the level of an adverse interest sufficient to divest the person of standing); *see also Betts v. Brown*, No. 14-99-00619-CV, 2001 WL 40337, at *4 n.2 (Tex. App.— Houston [14th Dist.] Jan. 18, 2001, no pet.) (not designated for publication) (noting that "the legislature contemplated that a person indebted to the proposed ward would be allowed to participate in the guardianship proceeding, but may be disqualified to serve as guardian"). As discussed below, there was evidence that Billie had a conflict of interest with the children related to the wrongful death lawsuit. There was no evidence, however, that this conflict of interest rose to such a level that Billie had an interest that was adverse to the well-being of the children. *See In re Guardianship of Gilmer*, 2015 WL 3616071, at *9; *In re Guardianship of Miller*; 299 S.W.3d at 189; *Betts*, 2001 WL 40337, at *4.

We hold that Billie has standing to challenge Jennifer's appointment as guardian of the children. Therefore, we deny Jennifer's request that we dismiss this appeal.

## Analysis

In her first issue, Billie contends that the trial court abused its discretion when it denied her application to be appointed guardian of the children.

If the last surviving parent of a child did not appoint a guardian, "the nearest ascendant in the direct line of the minor is entitled to guardianship of both the person and the estate of the minor." EST. § 1104.052(1). If more than one ascendent in the

7

same degree in the direct line of the minor applies to be guardian, the trial court is required to appoint one of the ascendants "according to circumstances and considering the minor's best interests." *Id.* § 1104.052(2). If no ascendant in the direct line applies to be guardian, the trial court is required to appoint the minor's nearest of kin or, if two or more persons are in the same degree of kinship to the minor, to appoint one of those persons "according to circumstances and considering the minor's best interests." *Id.* § 1104.052(3). Finally, if the minor does not have an eligible relative who has applied to be the guardian, the trial court is required to appoint a "qualified person." *Id.* § 1104.052(4).

A person, however, may be disqualified from serving as guardian. *Id.* §§ 1104.351–.359. As relevant to these cases, a person may not be appointed guardian of a child if the person is a party to a lawsuit concerning or affecting the welfare of the proposed ward, unless the court:

> (A) determines that the lawsuit claim of the person who has applied to be appointed guardian is not in conflict with the lawsuit claim of the proposed ward; or

> (B) appoints a guardian ad litem to represent the interests of the proposed ward throughout the litigation of the ward's lawsuit claim[.]

*Id.* § 1104.354(1).

Billie argues that, pursuant to Section 1104.052 of the Estates Code, she was entitled to be named guardian of the children because she was the only "nearest ascendant in the direct line of the minor" who filed an application to be named guardian and the trial court determined that she was eligible, qualified, and not disqualified to serve as guardian. *See* EST. § 1104.052(1). Jennifer responds that the trial court's initial finding that Billie was qualified is not supported by legally or factually sufficient evidence and that, "most, if not all," of Billie's arguments were eliminated by an amended finding made by the trial court on June 30, 2020, that

Billie is disqualified to serve as guardian. Billie, on the other hand, asserts that the trial court's June 30, 2020 amended finding is void.

After Billie filed these appeals from the guardianship orders, Jennifer filed a wrongful death lawsuit on behalf of the children in Ector County, nonsuited the children's claims in the Harris County wrongful death lawsuit, and reached a settlement with some of the defendants. An ad litem was appointed for the children, and the case was set for a "friendly suit hearing" in the 358th District Court. Jennifer filed motions in the guardianship cases to establish management trusts for the children to hold the settlement proceeds.

In each guardianship case, Billie and John filed a combined motion to dismiss for lack of authority or, alternatively, a motion to abate pending the appeal; motion to show authority; and first amended objection to Jennifer's application for the creation of the management trusts (Billie's county court motions). Similarly, in the wrongful death lawsuit in district court, Billie filed a combined motion to dismiss for lack of authority or, alternatively, a motion to abate pending appeal of the guardianship orders; motion to show authority; and objection to the settlement (Billie's district court motion). In both the district court and the trial court, Billie asserted that Jennifer lacked authority to file or settle the Ector County wrongful death lawsuit while Billie's appeals of the guardianship orders were pending.

Billie also filed petitions for writ of mandamus in this court related to the guardianship cases and the Ector County wrongful death lawsuit in which she argued that Jennifer did not have authority to file new litigation on behalf of the children while her appointment as guardian was on appeal. Billie requested that this court (1) order the trial court to dismiss Jennifer's applications to establish management trusts, (2) stay the trial court proceedings "to the extent Jennifer seeks to settle the wrongful death lawsuit, pending" this court's determination of these appeals, (3) order the district court to vacate the order that set the "friendly suit hearing," and

9

(4) stay all proceedings in the wrongful death lawsuit pending the resolution of these appeals. On May 26, 2020, we stayed "all proceedings related to the establishment of the management trusts" in the trial court and "all proceedings related to the approval of the settlement" in the wrongful death lawsuit until further order of this court or resolution of the original proceedings. However, we specifically allowed the district court to rule on Billie's district court motion and allowed the trial court to rule on Billie's county court motions.

In her response to Billie's county court motions, Jennifer argued that, in the guardianship orders, the trial court granted her "all rights and duties of guardians" under the Estates Code and "all of the duties, powers, and limitations" granted to a guardian by Texas law and that those powers included the ability to file suit on behalf of the children. Jennifer also requested that the trial court find that Billie was disqualified as a matter of law from serving as the children's guardian and was prohibited from contesting or interfering with Jennifer's appointment or actions as guardian.

Jennifer specifically argued that it was undisputed that Billie and Jack were plaintiffs in the Harris County wrongful death litigation and that Jack was a third-party defendant in that litigation and was alleged to have negligently caused Jacob's and Natalee's deaths. Jennifer asserted that, as a plaintiff in the Harris County wrongful death litigation, Billie had a financial interest in the outcome and settlement of claims against the defendants as well as a claim to a portion of the defendant's insurance coverage that conflicted with the children's financial interest. Jennifer also argued that Billie could not make unbiased and objective decisions on behalf of the children with regard to Jack's liability for Natalee's and Jacob's deaths. Jennifer requested that the trial court strike its finding that Billie was not disqualified and find that Billie was disqualified and had an interest adverse to those of the children.

10

Jennifer attached to her response:

(1) the fourth amended petition in the Harris County wrongful death lawsuit, which demonstrated that Billie and Jack were the only two remaining plaintiffs and that Billie and Jack sought to recover damages "for the wrongful death of Jacob";

(2) excerpts of Jordan's testimony in the guardianship hearing in which she stated that Billie and Jack were plaintiffs in the Harris County wrongful death litigation, that Jordan believed that either Billie or Jack could be named as a responsible third party or a defendant in the wrongful death case, that Billie was on the phone with Natalee when Natalee went into the pumphouse, and that Jordan believed that Billie's or Jack's potential liability created a conflict between Billie and the children;

(3) a cross-action filed against Jack by one of the defendants in the Harris County wrongful death lawsuit in which it was alleged that Jack was the superintendent of the pumphouse and had the responsibility to ensure that it had operational hydrogen sulfide monitors; that Jack knew or should have known that the hydrogen sulfide monitors in the pumphouse had been disabled, had not been repaired, and were not operational; that Jack directed Natalee to enter the pumphouse when he knew or should have known of the danger of exposure to hydrogen sulfide; and that Jack's negligence caused Natalee's and Jacob's deaths;

(4) excerpts from John's testimony in the guardianship hearing in which he stated that he was named as the contingent beneficiary of Jacob's life insurance policy and that he believed that Jacob intended for him to be the children's guardian; and

(5) excerpts from John's deposition testimony in a suit affecting the parent–child relationship in which he stated that he had received a "little over 500,000" as payment on Jacob's life insurance policy, that he had not given any of the money to the children, that he had not offered any of the money to Jennifer to help take care of the children, that he had not paid any of the children's expenses, and that he had spent approximately $400,000 of the money to get his "finances in order" so that he would be able to take care of the children.

Jennifer also filed a proposed order that included a finding that Billie was disqualified from serving as the children's guardian.

Billie and John filed a reply in each case and asserted that the doctrine of res judicata applies to the issue of Billie's qualifications to serve as guardian, that Jennifer had the opportunity to present evidence on Billie's qualifications at trial, and that Jennifer had failed to prove that Billie was not qualified. Billie and John also objected that Jennifer's proposed order and response were beyond the scope of this court's stay order and that the trial court lacked plenary power over the guardianship orders.

The trial court considered Billie's county court motions by submission and signed an order in each case. The trial court took judicial notice of the record from the underlying proceedings, considered the motions and objections brought by Billie and John, and considered "any and all responses and exhibits attached to the responses and motions" that were filed by Jennifer. The trial court denied Billie's county court motions. The trial court also found:

> Jennifer Payne is the duly appointed and current Guardian of [the child], and is a party that is qualified to act as Guardian. This Court has reconsidered the determination at trial as to eligibility, and finds that Billie Dean is disqualified to serve as guardian. Therefore, Jennifer Payne has the authority to both create a Management Trust for the benefit of [the child] and to file and settle the Ector County Wrongful Death Lawsuit on behalf of [the child].

In the pending original proceedings in this court, Billie filed challenges to the trial court's June 30, 2020 orders and a supplemental petition for writ of mandamus in which she requested that we declare that the June 30, 2020 orders were void as a matter of law. In her reply brief in these appeals, Billie contends that the trial court's June 30, 2020 orders were void and of no effect because (1) the orders were signed in violation of this court's stay order; (2) at the time that it signed the June 30, 2020 orders, the trial court had lost plenary power over the guardianship orders; (3) the trial court's "re-trial" of its earlier ruling violated Billie's right to due process; (4) the trial court based its new finding on documents outside the trial record; and (5) the

12

doctrine of res judicata barred the trial court from relitigating whether Billie was qualified to serve as guardian of the children.[4]

Billie first asserts that the trial court's finding in the June 30, 2020 orders that Billie is disqualified is void because it violated this court's stay order. An appellate court may grant "any just relief pending the court's action" on a petition for writ of mandamus, including a stay of proceedings in the trial court. *See* TEX. R. APP. P. 52.10(a)–(b). "A stay of the underlying proceedings prevents the parties and the respondent trial court from taking action in the case until they receive further orders from the appellate court." *In re Bates*, 429 S.W.3d 47, 53 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). An order issued by a trial court in violation of an appellate court stay order is void. *Id.*; *Oryx Capital Int'l, Inc. v. Sage Apartments, L.L.C.*, 167 S.W.3d 432, 438 (Tex. App.—San Antonio 2005, no pet.).

However, we did not stay all proceedings in the trial court. Rather, we stayed "all proceedings related to the establishment of the management trusts." The trial court's amended finding that Billie was disqualified to serve as guardian related to the appointment of a guardian for the children in the guardianship orders, not to the establishment of the management trusts. Therefore, the trial court's finding did not violate this court's stay order.

Billie next argues that the trial court signed the June 30, 2020 orders almost five months after it lost plenary power over the guardianship orders; that an order

---

[4]Generally, an appellate court need not consider issues raised for the first time in a reply brief. *Watson v. Schrader*, No. 11-18-00064-CV, 2020 WL 976939, at *3 (Tex. App.—Eastland Feb. 28, 2020, pet. denied) (mem. op.). However, in this case, the trial court signed the June 30, 2020 orders after Billie filed her opening brief on May 7, 2020, and after Jennifer filed her response brief on June 29, 2020. Jennifer filed a supplemental brief on July 16, 2020, in which she argues that the trial court's amended finding in its June 30, 2020 orders that Billie was disqualified to serve as guardian "eliminates most, if not all, of [Billie's] arguments in these appeals." In her reply brief, Billie responded to Jennifer's argument. Under these circumstances, we may consider Billie's complaints in her reply brief about the June 30, 2020 orders. *See MedFin Manager, LLC v. Stone*, No. 04-19-00662-CV, 2020 WL 5027201, at *2 (Tex. App.—San Antonio Aug. 26, 2020, no pet. h.) ("Generally, we may not consider an issue not raised in an appellant's brief. But if the appellee raises and fully briefs an issue, and the appellant replies and likewise fully briefs the issue, we may consider it." (internal citations omitted)).

signed after a trial court loses plenary power is void; and that, if a county court at law sitting in probate could continue to revise orders that are on appeal, the order would never be subject to appellate review.

The trial court signed the guardianship orders on January 16, 2020, and Billie appealed those orders on February 13, 2020. Billie argues that the trial court lost plenary power over the guardianship orders on February 17, 2020, thirty days after the order was signed.[5]

"Plenary power refers to that period of time in which a trial court may vacate its judgment by granting a new trial, or in which it may modify or correct its judgment." *In re Gillespie*, 124 S.W.3d 699, 702 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (en banc). After the trial court lost plenary power over the guardianship orders, it could no longer grant a new trial on the issue of who should be appointed guardian and could not revise, modify, or correct the guardianship orders. *See In re Brookshire Grocery Co.*, 250 S.W.3d 66, 72 (Tex. 2008) (orig. proceeding). However, in the June 30, 2020 orders, the trial court did not grant a new trial on the issue of who should be appointed guardian and did not revise, modify, or correct the guardianship orders. Rather, the trial court denied Billie's county court motions and amended its findings of fact that related to Billie's qualifications to serve as guardian. *In re Gillespie*, 124 S.W.3d at 703 ("Findings of fact and conclusions of law, if made by the trial court, do not vacate or change the judgment, they merely explain the reasons for the judgment.").

---

[5]John filed a motion for new trial in each case on February 12, 2020. John's motions for new trial extended the trial court's plenary power over the guardianship orders. *See* TEX. R. CIV. P. 329b(e), (g); *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000). However, the record does not reflect that the trial court granted John's motions for new trial, and John's motions for new trial would not have extended the trial court's plenary power until June 30, 2020. *See Lane Bank Equip.*, 10 S.W.3d at 310 (noting that an appropriate postjudgment motion filed within thirty days after the judgment is signed extends the trial court's plenary power for up to an additional seventy-five days).

A trial court has the power to make amended findings of fact even after it loses plenary power over an order. *Jefferson Cty. Drainage Dist. No. 6 v. Lower Neches Valley Auth.*, 876 S.W.2d 940, 959 (Tex. App.—Beaumont 1994, writ denied); *see also Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 141 (Tex. 2017) (per curiam); *Jaramillo v. Portfolio Acquisitions, LLC*, No. 14-08-00939-CV, 2010 WL 1197669, at \*2 (Tex. App.—Houston [14th Dist.] Mar. 30, 2010, no pet.) (mem. op.) ("[T]he expiration of the trial court's plenary power does not affect or diminish the trial court's ability to make and file amended findings of fact and conclusions of law.").[6] "[A]ny conflict between the original findings and the amended findings are resolved definitely in favor of the later findings." *Jefferson Cty. Drainage Dist.*, 876 S.W.2d at 960; *see also Nw. Dodge, Inc. v. Woody*, No. 01-02-00669-CV, 2003 WL 1848689, at \*1 (Tex. App.—Houston [1st Dist.] Apr. 10, 2003, pet. denied) (mem. op.); *Morrison v. Morrison*, 713 S.W.2d 377, 381 (Tex. App.—Dallas 1986, writ dism'd).

When a trial court makes "belated findings[,] the only issue that arises is the injury to the appellant, not the trial court's jurisdiction to make the findings." *Jaramillo*, 2010 WL 1197669, at \*2; *see also Morrison*, 713 S.W.2d at 381. When a trial court enters "belated findings and conclusions, then the objecting litigant must show harm and injury." *Jefferson Cty. Drainage Dist.*, 876 S.W.2d at 960. Without harm, "litigants have no remedy if a trial court files untimely findings and conclusions." *Robles v. Robles*, 965 S.W.2d 605, 610 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *see also Windsor v. Fleming*, No. 10-14-00392-CV, 2019 WL 3804484, at \*22 (Tex. App.—Waco Aug. 7, 2019, pet. denied) (mem. op.). An appellant is harmed if, because of the untimely findings, she was unable to request additional findings or was unable to properly present her appeal. *In re E.A.C.*, 162

---

[6]*See also Smith v. Tuxedo Farmer's Gin Co.*, No. 11-96-257-CV, 1997 WL 33798171, at \*2 (Tex. App.—Eastland Oct. 23, 1997, no pet.) (not designated for publication) (holding that the trial court had the power to delete findings of fact after the expiration of its plenary power).

15

S.W.3d 438, 443 (Tex. App.—Dallas 2005, no pet.); *Jefferson Cty. Drainage Dist.*, 876 S.W.2d at 960; *see also Clark v. Litchenburg*, No. 05-18-00278-CV, 2019 WL 4010771, at *7 (Tex. App.—Dallas Aug. 26, 2019, no pet.) (mem. op.) ("The general rule is that an appellant has been harmed if, under the circumstances of the case, he has to guess at the reasons the trial court ruled against him.").

In this case, the trial court's amended finding as to Billie's qualifications to serve as guardian impacted Billie's argument in her opening brief that, because the trial court had found her to be qualified, she was statutorily entitled to be named guardian of the children. However, the amended finding did not conflict with the guardianship orders. Rather, it explained the basis for the trial court's decision to appoint Jennifer as guardian. The trial court's amended finding did not change the primary issue in these appeals—did the trial court abuse its discretion when it failed to appoint Billie as guardian of the children.[7]

After the trial court made the amended finding, Billie did not request that the appeals be abated so that she could seek additional or amended findings from the trial court. Further, in a post-submission brief, Billie argued that the trial court's amended finding as to Billie's disqualification was "wrong on the merits," that she was qualified and not disqualified to be the guardian of the children, and that her interests were aligned with the children's interests. Because Billie did not request that we abate the appeals after the trial court made the amended finding and was able to adequately present her case to this court, we may give the amended finding due consideration. *See In re A.C.S.*, 157 S.W.3d 9, 15 (Tex. App.—Waco 2004, no pet.) (holding that appellate court could consider amended findings because appellant did not request that the appeal be abated for further hearings, had filed a supplemental

---

[7]We note that, even if we agreed with Billie's position that she was statutorily entitled to be appointed as guardian, the trial court, on its own motion and with proper notice, could remove Billie if it determined that she was disqualified from serving as guardian. Est. § 1203.052(a)(11), (a-1)(1).

16

brief in response to the findings, and did not contend that she had been harmed by the belated findings).

Billie also argues that the doctrine of res judicata "bars Jennifer and [the trial court's] attempt to re-litigate Billie's qualifications to serve as guardian when it was finally determined." "Res judicata bars the relitigation of claims that have been finally adjudicated or that could have been litigated in the prior action." *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017) (quoting *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008), *superseded by statute as recognized in Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 518 (Tex. 2012)). A party relying on the doctrine of res judicata must prove (1) a prior final determination on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were or could have been raised in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

The trial court's amended finding was not a relitigation of the guardianship orders. Rather, the trial court made the amended finding to explain the basis for its decision to appoint Jennifer as guardian. As set out above, the trial court had the power to make this amended finding even after it lost plenary power over the guardianship orders.

Billie finally contends that the trial court's "re-trial" of its "earlier ruling" violated her right to due process because she did not receive notice that a new trial had been granted or that a retrial of the issue of Billie's qualification had been set and that the trial court improperly based its "purported reversal on documents outside the trial record." To preserve a complaint for appellate review, a party (1) must make a timely request, objection or motion in the trial court that states the specific grounds for the ruling sought, unless the specific grounds are apparent from the context, and (2) obtain a ruling from the trial court or object to the trial court's

refusal to rule. TEX. R. APP. P. 33.1(a); *Ad Villarai*, 519 S.W.3d at 137. Even constitutional arguments, such as a lack of due process, are waived if not raised first in the trial court. *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003); *Dreyer v. Wislicenus*, No. 11-18-00234-CV, 2020 WL 5490727, at *6 (Tex. App.—Eastland, Sept. 11, 2020, no pet. h.) (mem. op.).

In her response to Billie's motions, Jennifer requested that the trial court strike its finding that Billie was not disqualified and find that Billie was disqualified. In her reply, Billie argued that Jennifer could not relitigate the issue of Billie's qualification to be guardian while the guardianship orders were on appeal. Billie objected to Jennifer's proposed order on the grounds that it was beyond the scope of this court's stay order, that the doctrine of res judicata barred the relitigation of the issue of Billie's qualifications, and that the trial court lacked plenary power over the guardianship orders. The record does not reflect that Billie filed any objections or motions in the trial court after it made the amended finding.

Billie did not object in the trial court that, when it made the amended finding, the trial court improperly relied on evidence outside the trial record or violated Billie's right to due process. Therefore, Billie failed to preserve those complaints for our review.

Further, even if preserved, Billie's complaints have no merit. Billie first argues that she received no notice that a new trial had been granted and no notice that a retrial on the issue of Billie's qualifications had been set. However, as set out above, the trial court did not grant a motion for new trial on the guardianship order and did not "re-try" the issue of Billie's qualifications. Rather, it made an amended finding that Billie was disqualified to serve as guardian.

Billie was also provided notice that the trial court could make an amended finding. In her response to Billie's county court motions, Jennifer requested that the trial court strike its finding that Billie was qualified and find that Billie was

18

disqualified. Billie filed a reply to Jennifer's response and argued that the trial court did not have the power to make the amended finding. Billie also objected to Jennifer's proposed order that contained an amended finding that Billie was disqualified.

The trial court notified Billie on June 12, 2020, that it would hear Billie's county court motions on June 30, 2020. The notice specifically stated that the hearing would be conducted by submission unless a party submitted an objection to that procedure by June 22, 2020. Billie did not file an objection, and the trial court considered Billie's county court motions by submission on June 30, 2020.

Billie had notice that Jennifer had requested the amended finding and had an opportunity to be heard on that request. Therefore, her right to due process was not violated. *See Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 265 (Tex. 2019) ("Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." (quoting *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995))).

Billie also complains that the trial court considered evidence outside the trial record when it made the amended finding and cites to authority that the trial court could not change the record that existed at the time the guardianship orders were entered and that this court cannot consider evidence that was not before the trial court at the time it made its ruling.

First, the record does not clearly establish that the trial court considered evidence outside the record of the guardianship hearing when it made the amended finding. In its June 30, 2020 orders, the trial court stated that it had considered the evidence from the guardianship hearing and the exhibits attached to Jennifer's response to Billie's county court motions. The trial court did not state that it considered the exhibits when it made the amended finding as to Billie's qualifications to serve as guardian as opposed to when it ruled on Billie's county

19

court motions. Indeed, the trial court's statement that it had "reconsidered the determination at trial as to eligibility" is some indication that it considered only the evidence "at trial" when it made the amended finding.

Further, although three of the exhibits attached to Jennifer's response—the fourth amended petition in the Harris County wrongful death lawsuit, a cross-action filed against John in the Harris County wrongful death lawsuit, and John's deposition testimony in which he stated that he had received the proceeds from Jacob's life insurance policy and had spent 80% of the money getting his "finances in order"—were not part of the guardianship trial, those exhibits did not contain any substantive information that was not before the trial court at the guardianship hearing.

At the guardianship hearing, Jordan testified without objection that Billie and Jack were plaintiffs in the Harris County wrongful death lawsuit and that Jack might be named as a defendant or responsible third party in that case. Both Jordan and Jennifer testified without objection that they believed that Billie had a conflict with the children based on Billie's and Jack's potential responsibility for Jacob's and Natalee's deaths. Indeed, the trial court acknowledged during the hearing that it had been established, and that the court was well aware, that Billie and Jack had a potential liability to the children.

As to John's testimony in his deposition, Jennifer relied on that testimony only to support her argument that John was not qualified to be the children's guardian and did not have standing to contest Jennifer's appointment as guardian. However, the substance of that testimony was also largely before the trial court in the guardianship hearing. Specifically, during the guardianship hearing, the following exchange occurred between Jordan's counsel and John:

> Q. Okay. Is it your intention to essentially pay that money into the court registry and make it a part of the kids' guardianship estate.

A. I'm not sure how that works. My intention was to get guardianship of the children and use that money to raise them to the best of my ability.

Q. Well, you're -- you're testifying that it was your brother's intention for that money to be his kids'; he just had to leave it to an adult –

A. I did not --

Q. -- instead of the kids, right?

A. I did not say that, no.

Q. You didn't?

A. I did not testify that that was my brother's intentions, no.

John also testified that he had not thought about what he would do with the proceeds from Jacob's life insurance policy if he were not named as guardian. From this testimony, the trial court could have reasonably inferred that John believed that he, not the children, was entitled to the proceeds of the life insurance policy and that he intended to keep the proceeds even if he were not appointed as guardian.

On this record, Billie has failed to demonstrate that the trial court's amended finding was based on evidence that was not before the trial court at the guardianship hearing. Therefore, she has not established that this court cannot consider the amended finding. *See* TEX. R. APP. P. 44.1 (stating that, to constitute reversible error, the alleged error must have caused the rendition of an improper judgment).

Because the trial court's amended finding that Billie is not qualified to serve as guardian is not void, we next consider whether, based on the amended finding, the trial court abused its discretion when it failed to appoint Billie as guardian. We review a trial court's appointment of a guardian for an abuse of discretion. *In re Guardianship of A.E.*, 552 S.W.3d 873, 876 (Tex. App.—Fort Worth 2018, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609,

21

614 (Tex. 2007). A trial court also abuses its discretion when it rules without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). But an abuse of discretion does not occur when a trial court bases its decision on conflicting evidence and some evidence supports the decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

In guardianship proceedings, legal and factual sufficiency are not independent, reversible grounds of error but are factors to consider when we assess whether the trial court abused its discretion. *In re Guardianship of A.E.*, 552 S.W.3d at 877. "We view the evidence in the light most favorable to the probate court's decision, and an abuse of discretion does not occur when the court's decision is based on conflicting evidence." *Id.* (quoting *In re Guardianship of Laroe*, No. 05-15-01006-CV, 2017 WL 511156, at *5 (Tex. App.—Dallas Feb. 8, 2017, pet. denied) (mem. op.)).

A person may not be appointed guardian if she has a "conflict of interest" with the ward. *In re Guardianship of Henson*, 551 S.W.2d 136, 139 (Tex. App.—Corpus Christi–Edinburg 1977, writ ref'd n.r.e.); *see also* EST. § 1104.354. Rather, a party may be appointed guardian only if she possesses "disinterestedness from obligations antagonistic to, or conflicting with, financial interests of the minor." *In re Guardianship of Henson*, 551 S.W.2d at 139 (quoting *Penny v. Hampton*, 283 S.W. 599, 600 (Tex. App.—Texarkana 1926, no writ)). A person is statutorily barred from serving as guardian if the person is a party to a lawsuit concerning or affecting the welfare of the proposed ward, unless the court either determines that the lawsuit claim of the person who has applied to be appointed guardian is not in conflict with the lawsuit claim of the proposed ward or appoints a guardian ad litem to represent the interests of the proposed ward throughout the litigation of the ward's lawsuit claim. EST. § 1104.354(1).

The evidence at the guardianship hearing established that Billie and Jack were plaintiffs in a wrongful death lawsuit in Harris County in which they asserted a claim based on Jacob's death, that either Billie or Jack possibly instructed Natalee to go into the pumphouse, that the accident occurred on Jack's lease, and that either Billie or Jack could be named in the wrongful death lawsuit as a person who had responsibility for Natalee's and Jacob's deaths. Further, Jennifer testified that she believed that either Billie or Jack was responsible for Natalee's death and that, if she was named guardian, she intended to sue Billie and/or Jack on behalf of the children. The trial court acknowledged during the guardianship hearing that it had been established that Billie and Jack had a potential liability to the children.

Billie is a party to a lawsuit that concerns or affects the welfare of the children. Further, this is not a case in which family members are aligned and the issue is merely the division of any recovery. Rather, the children may have a claim directly against Billie or Jack for the death of Natalee or Jacob. Billie would have an inherent conflict, as guardian for the children, in asserting a claim on behalf of the children against herself or her husband. *See Phillips v. Phillips*, 511 S.W.2d 748, 750 (Tex. App.—San Antonio 1974, no writ) (holding that mother was disqualified from serving as guardian of the children when she would have to decide her own claim that certain property was community property rather than separate property of the children's deceased father); *Penny*, 283 S.W. at 600 (holding that the appellant had a conflict of interest with his grandchildren because both appellant's wife and the children were claiming the benefits of an insurance policy that was a major part of the children's estate). There was no evidence that Billie's interests align with the interests of the children as to any claim against herself or against Jack.

Billie argues that the statute allows a person who is involved in a lawsuit that concerns or affects the interests of the proposed ward to serve as guardian if the trial court either determines that the interests of the person who has applied to be guardian

are not in conflict with the lawsuit claim of the proposed ward or appoints a guardian ad litem to represent the interests of the proposed ward through the litigation of the ward's lawsuit claim. Billie, however, requested neither the appropriate finding from the trial court nor the appointment of a guardian ad litem.

On this record, the trial court did not abuse its discretion when it found that Billie is disqualified from serving as guardian. Therefore, the trial court did not err when it denied Billie's application to be appointed guardian. We overrule Billie's first issue.

In her second through fourth issues, Billie argues that the trial court abused its discretion when it used an extratextual test to decide who should serve as guardian, when it appointed Jennifer as guardian, and when it considered the opinion of the attorney ad litem as to the person who should be appointed guardian. However, an appellant "may not complain of errors that do not injuriously affect it or that merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000); *see also In re Guardianship of V.A.*, 390 S.W.3d 414, 418 (Tex. App.—San Antonio 2012, pet. denied). Because Billie is disqualified from serving as guardian, she cannot show that any error by the trial court in its selection of the person to be guardian injuriously affected her rights. Therefore, we overrule Billie's second, third, and fourth issues.

In her fifth issue, Billie contends that the trial court erred when it failed to file additional findings of fact and conclusions of law. After the trial court entered its original findings of fact and conclusions of law, Billie requested additional findings that Jacob and Natalee did not appoint a guardian for the children and that Billie was the only nearest ascendant in the direct line who filed an application to be guardian. Billie requested additional conclusions of law that she was entitled to be appointed guardian based on the statutory preference in Section 1104.052 of the Estates Code and that, rather than applying the statutory preference, the trial court used a five-part

24

test and the best interest of the children when it decided to appoint Jennifer as guardian.

After a trial court files original findings of fact and conclusions of law, a party may request specified additional or amended findings or conclusions. TEX. R. CIV. P. 298. The court must then file any additional or amended findings or conclusions that are appropriate. *Id.*; *King Aerospace, Inc. v. King*, No. 05-19-00245-CV, 2020 WL 2079177, at *7 (Tex. App.—Dallas Apr. 30, 2020, no pet.) (mem. op.). "Additional findings of fact and conclusions of law are not required if the original findings of fact and conclusions of law adequately relate the facts and law necessary to present the party's appeal." *Webb v. Schlagal*, 530 S.W.3d 793, 810 (Tex. App.—Eastland 2017, pet. denied) (citing *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ)).

We will not reverse based on the trial court's failure to make additional findings of fact and conclusions of law "unless the record affirmatively shows that the complaining party has suffered an injury." *Id.* Injury is established when the trial court's refusal to enter the additional findings and conclusions prevents the party from adequately presenting a matter on appeal. *Id.* There is no injury to the party when the trial court fails to enter additional findings that cover uncontested facts. *See Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 550 (Tex. App.—Houston [1st Dist.] 1994, no writ); *see also In re B.L.W.*, No. 12-18-00281-CV, 2019 WL 4727823, at *8 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op.).

Neither of the additional findings requested by Billie related to contested facts. Jordan, Billie, Jennifer, and John all testified that they did not find a will or a written designation of guardianship by Jacob or Natalee. Melissa Ellis, a friend of Natalee's, testified that, three or four years before the hearing, Natalee had said that she and Jacob had a will, that "John was their first choice," and that Melissa and her husband "were their second." Ellis, however, never saw the will or "anything in

writing," and there was no evidence that a will or a written designation of guardian existed at the time of Natalee's and Jacob's deaths. Further, it was undisputed that Billie was the only grandparent who applied to be the children's guardian. Billie, therefore, has failed to show any harm from the trial court's failure to make the requested additional findings. *See Cox*, 882 S.W.2d at 550.

The additional conclusions of law requested by Billie were not necessary for her to present her issues on appeal. The original findings of fact and conclusions of law demonstrated that the trial court applied a five-part test and considered the best interest of the children when it decided to appoint Jennifer as guardian. Further, the trial court has determined that Billie is not qualified to serve as guardian. Accordingly, the trial court was not required to enter an additional conclusion of law that Billie was statutorily entitled to be appointed guardian.

Billie has failed to demonstrate any harm from the trial court's failure to make the requested additional findings of fact and conclusions of law. Accordingly, we overrule Billie's fifth issue.

### *This Court's Ruling*

We affirm the trial court's January 16, 2020 orders in which it appointed Jennifer Payne as the guardian of E.M.D. and C.D.D.


JOHN M. BAILEY

October 22, 2020                              CHIEF JUSTICE

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[8]

Willson, J., not participating.

---

[8]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.